UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nikos Kidis,

    Plaintiff,

v.                                      Case No. 16-13070

Jean Reid and John Moran,        Sean F. Cox
                                                United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

After driving drunk and hitting another vehicle, Plaintiff fled the scene of the accident. When approached by police officers, he fled from them too. In the midst of the chase, however, he gave up and decided to surrender. This suit arises from what followed: a knee strike to Plaintiff's legs followed by two to seven punches to his face during his arrest and the deprivation of water and medical care during his detention at the police station. Plaintiff has sued two City of Warren police officers under § 1983, alleging excessive force and deliberate indifference to his medical needs. Discovery has concluded and Defendants have moved for summary judgment, asserting qualified immunity.

For the reasons below, the Court shall grant Defendants' Motion for Summary Judgment in part and deny it in part. The Court shall grant the motion as to the deliberate indifference claim because Plaintiff cannot show that Defendants knew of and disregarded a serious risk to his health and safety. The Court shall also grant the motion as to the excessive force claim against Defendant Reid because Plaintiff cannot show that she was personally involved in the use of

1

force. But the Court shall deny the motion as to the excessive force claim against Defendant Moran because there is a genuine issue of fact on whether Moran was present and personally involved in the use of excessive force during Plaintiff's arrest.

## BACKGROUND

In August 2014, Plaintiff Nikos Kidis spent the day in Hamtramck at a Labor Day festival. Pl. Dep., p. 33-34. Over the course of the day, Plaintiff drank about ten to twelve beers. *Id*. at 34. Then, he got behind the wheel to drive home. Def. Stmt. of Undisputed Facts, ¶ c. Around 10:00 or 10:30 p.m., while Plaintiff was driving, the front wheel on the driver's side of his vehicle blew out, causing Plaintiff to collide with a vehicle next to him. Pl. Dep., p. 32; Christine Dep., p. 13. Plaintiff pulled over to the side of the road, after which he panicked and fled the scene on foot. Pl. Dep., p. 33. The driver of the other vehicle, Daniel Christine, called 911 to report the accident and informed the dispatcher that Plaintiff was leaving the scene. Christine Dep., p. 15-16.

Officers from the Warren Police Department responded to the 911 call. Reid Dep., p. 18. While responding to the call, one officer, Defendant Jean Reid, encountered Plaintiff about a mile from the accident, walking briskly in the opposite direction from the scene. *Id*. at 21-22. Reid activated her emergency lights and, when Plaintiff continued walking, asked him to stop over the PA. *Id*. at 23. Plaintiff complied and went to speak with Reid, who had exited her vehicle. Pl. Dep., p. 36. When Plaintiff reached her, Reid smelled a strong odor of alcohol. Reid Dep., p. 24. She asked Plaintiff if he had been driving, which he denied. Pl. Dep., p. 38. Reid then told him to turn around and to place his hands behind his back, which he did. Reid Dep., p. 26. Once Reid put one handcuff on Plaintiff's left wrist, Plaintiff yanked his arm away, ripping

2

the other handcuff out of Reid's hand. *Id*.; Pl. Dep., p. 36. Apparently disoriented, Plaintiff spun around a couple times, lost his footing, and then took off running. Pl. Dep., p. 37-39; Reid Dep., p. 29-31.

Reid began pursuing Plaintiff on foot. Reid Dep., p. 32. Plaintiff ran until he reached a factory, upon which he jumped over a barbed wire fence to enter into the factory's yard. Def. Stmt., ¶ y. Reid did not follow Plaintiff over the fence but instead radioed for assistance. Reid Dep., p 34. Several officers, including Defendant John Moran, responded to the request and headed towards the area. Def. Stmt., ¶ w, x. Meanwhile, Reid returned to her squad car. Reid Dep., p. 36. From this point, the parties' stories diverge significantly.

According to Plaintiff, he ran through the factory yard and jumped over another fence, after which he entered a deep wooded area. Pl. Dep., p. 42-43. At this point, Plaintiff gave up and decided to surrender. *Id*. at 42, 44. He laid down on his stomach with his arms out in front of him. *Id*. Before he laid down, Plaintiff did not see any police officers pursuing him. *Id*. at 44.

After he laid down, Plaintiff heard two male officers cutting through the nearby fence. *Id*. at 45. He did not, however, see Officer Reid. *Id*. The officers approached Plaintiff and one of them thrust his knee into the back of Plaintiff's legs. *Id*. at 49-50. The officers then flipped Plaintiff onto his back and punched him about two to seven times in the head. *Id*. at 50-52. While hitting him, the officers said: "We'll teach you to f***ing run." *Id*. at 54. As he was being punched, Plaintiff kept his hands on the ground and did not attempt to fight back. *Id*. at 53. Nor did he attempt to prevent the officers from handcuffing him. *Id*. at 144. When the officers finished, they handcuffed Plaintiff's hands behind his back, hoisted him up, and, because his legs hurt too bad to walk, dragged him to a squad car. *Id*. at 55-56, 136-37. While he was being taken

3

to the car, Plaintiff saw two other male officers nearby. *Id*. at 57-58. Again, he did not see Officer Reid. *Id* at 57.

Naturally, Defendants' account is quite different. According to them, Officer Moran responded to Reid's call for assistance and headed towards the area. Moran Dep., p. 17. After pulling into a parking lot, he observed Plaintiff climb over a fence. *Id*. at 19-20. Moran, who was alone, exited his car and began chasing Plaintiff through an open field and into a dense wooden area. *Id*. at 22-24. Because the woods were pitch black, Moran had to use a flashlight. *Id*. at 45. Eventually, Moran caught up to Plaintiff and grabbed him, upon which Plaintiff attempted to break free. *Id*. at 25-26. In response, Moran delivered a knee strike to Plaintiff's common peroneal (a nerve in the lower leg), causing the two of them to fall to the ground. *Id*. at 27. While they were on the ground, Plaintiff tucked his hands underneath his body and kept them there, despite Moran's commands for Plaintiff to provide his hands. *Id*. at 28. So, to subdue Plaintiff, Moran pressed on his mandibular angle pressure point (this is a distractionary pain compliance technique involving pushing a digit underneath the ear). *Id*. at 29-30. Finally, Moran forced Plaintiff's hands behind his back and handcuffed him. *Id* at 30. Moran did not see any other officers during the arrest and denies punching Plaintiff in the face. *Id*. at 30-31.

Once Moran apprehended Plaintiff, several other officers arrived. *Id*. at 32. These officers, who were all male, did not include Officer Reid. *Id*. Two of these officers took Plaintiff out of the woods and placed him in a squad car, carrying him upright because he refused to walk. *Id*. at 36; Adkins Dep., p. 34. Moran did not have any further contact with Plaintiff, at the scene or at the station. Moran Dep., p. 38-39. During the arrest, Plaintiff never requested medical attention. *Id*. at 40.

Reid, who had returned to her squad car and drove to the location, saw Plaintiff being escorted out of the woods by an officer. Reid Dep., p. 37-40; Sedlak Dep., p. 26. But the exact timing of Reid's arrival, and her location relative to Plaintiff and the other officers, is unclear. Reid testified that she was in the parking lot while the officers exited the woods with Plaintiff. Reid Dep., p. 38; *see also* Sedlak Dep., p. 26. But another officer testified that he saw Reid among the group of officers that was leading Plaintiff out of the woods, though he did not know when she had arrived or where she was relative to Plaintiff. Adkins Dep., p. 31-32.

Although Plaintiff does not recall seeing Reid after their initial encounter, Reid testified that at some point after Plaintiff's arrest she spoke with him again, either at the scene or at the jail. Reid Dep., p. 40-41. Because Reid observed that Plaintiff had scratches and abrasions throughout his upper body and a swollen right eye, she requested that photographs be taken of his injuries. *Id*. at 43-44. Per Reid, Plaintiff never complained about any medical issues or requested medical attention. *Id*. at 41.

Once he was brought out of the woods, two officers transported Plaintiff to the Warren Police Department. *Id*. at 61; Def. Stmt., ¶ zz. According to Plaintiff, when he arrived, various officers belittled him and made derogatory remarks. Pl. Dep., p. 61-62. Although he cannot identify the officers that made the comments, Plaintiff believes that the officers that beat him and the officers that transported him to the station were present. *Id*. at 62. While he was at the station, Plaintiff asked for water, but was refused. *Id*. at 63; Burgess Dep., p. 17. He also asked for medical attention because he could not walk and felt light-headed, but was again refused. Pl. Dep., p. 64; Burgess Dep., p. 16. At one point during his booking, Plaintiff almost fainted and was caught by another prisoner. Pl. Dep., p. 81; Burgess Dep., p. 18. Despite an officer

observing this, and despite his requests for aid, Plaintiff never received medical attention when he was at the station. Pl. Dep., p. 107. He does not know, however, which officers he asked for water or medical treatment. *Id.* at 64-65. Nor has he identified the officers that were present for those requests or when he almost collapsed.

For the incident, Plaintiff was charged with several crimes and eventually pleaded guilty to attempted assaulting, resisting and/or obstructing a police officer, operating with a high blood alcohol content, and failure to stop after a collision. Def. Stmt., ¶ 8.

Plaintiff has now filed this § 1983 action against Defendants Reid and Moran, alleging a single count of excessive force (Doc. # 1). Defendants have moved for summary judgment (Doc. # 41). In his response to that motion, Plaintiff raises an additional claim for relief: deliberate indifference to medical needs. The Court held a hearing on this matter on April 19, 2018.

**STANDARD OF DECISION**

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**ANALYSIS**

Defendants assert qualified immunity in response to Plaintiff's § 1983 claims. Thus, Plaintiff "bears the burden of showing that (1) the defendant's acts violated a constitutional right

and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015).

### I. Plaintiff's Version of Events

To begin, the Court must determine the relevant facts. At this stage, the Court must view the facts in the light most favorable to Plaintiff, the non-moving party. *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002). Typically, this means adopting his version of the facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Yet Defendants urge the Court to disregard this command because Plaintiff's "serious intoxication and sketchy recall of events" make his story "incredible." Their argument is not persuasive.

Although Plaintiff admitted that his consumption of alcohol affected his memory of the incident, Pl. Dep., p. 145-46, he also testified that he remembers the day's events. *Id*. at 34. Indeed, he testified in great detail about those very events. This is not a case in which video evidence blatantly contradicts Plaintiff's story, *see Scott*, 550 U.S. at 380, or in which Plaintiff cannot remember the relevant events *at all*. *See Wysong v. City of Heath*, 260 F. App'x 848, 857 (6th Cir. 2008) (holding the plaintiff could not establish a genuine issue of material fact when he could not remember the relevant events). Because reasonable jury could believe Plaintiff's story, the Court must accept it for the purposes of this motion.

### II. Excessive Force

The next question, then, is whether a reasonable jury could conclude, as Plaintiff argues, that excessive force was used during his arrest. "It is well-established that individuals have a constitutional right to be free from excessive force during an arrest." *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 606 (6th Cir. 2006). "A police officer uses excessive force in arresting a

7

suspect if his actions are objectively unreasonable given the nature of the crime and the risks posed by the suspect's actions." *Smith v. Stoneburner*, 716 F.3d 926, 933 (6th Cir. 2013). The Court views "the situation from the perspective of a reasonable officer on the scene at the time," considering the severity of the crime, whether the suspect posed a threat, and whether the suspect was actively resisting arrest. *Smith v. City of Troy*, 874 F.3d 938, 943-44 (6th Cir. 2017).

Plaintiff's story is straightforward. When the officers reach him in the woods, he was laying face-down on the ground with his arms splayed out in front of him. Despite this apparent surrender, an officer thrust his knee into Plaintiff's legs and flipped him onto his back. Then, although Plaintiff was not resisting, one or both of the officers punched him in the head about two to seven times. As they did so, the officers made comments like: "We'll teach you to f***ing run." For his part, Plaintiff never attempted to fight back or actively attempt to prevent the officers from handcuffing him.

On these facts, a reasonable jury could find that the use of force was objectively unreasonable. Officers may not use knee strikes or punches to subdue a suspect who, like Plaintiff, was compliant and had stopped resisting. *See Rudlaff v. Gillispie*, 791 F.3d 638, 641-42 (6th Cir. 2015). Nor may they deliver "unjustified and gratuitous" punches to a neutralized suspect's head. *Baker*, 471 F.3d at 607. And the officers' alleged statements to Plaintiff as they hit him further indicate that their purpose was not to subdue him, but to punish him. *Id*.

Nor can Plaintiff's initial flight justify the officers' conduct. *See Baker*, 471 F.3d at 607-08 (holding a reasonable jury could conclude that the use of force against a suspect that had attempted to evade arrest but then surrendered before being struck was excessive); *Landis v. Baker*, 297 F. App'x 453, 461 (6th Cir. 2008) (holding that the officers' use of force was

unreasonable because the suspect "was no longer a threat to the officers nor was he actively attempting to flee."). When the officers reached him, he had already surrendered. Indeed, this case is quite similar to *Baker*, in which the plaintiffs initially fled from police before surrendering. 471 F.3d at 603-04. Yet, despite their surrender, police officers struck them multiple times with batons before arresting them. *Id*. Because the plaintiffs had surrendered before being struck, the Sixth Circuit held that a reasonable jury could conclude that the officers' subsequent use of force was "unjustified and excessive." *Id*. at 607, 609. So too here. By lying prone with his hands out in front of him, Plaintiff "showed that he was unarmed, was complaint, and was not a significant threat" to the officers' safety. *Id*. at 607.

Defendants also argue that the use of force was justified because Plaintiff was highly intoxicated and was actively resisting arrest. As a general matter, these factors affect the reasonableness inquiry; officers have greater latitude to use excessive force against a suspect that is actively resisting arrest. *See Rudlaff*, 791 F.3d at 641 ("Our cases firmly establish that it is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest."). But here, the facts viewed in Plaintiff's favor do not support Defendants' argument. Plaintiff's decision to lie prone and wait for the pursuing officers is the antithesis of active resistance.

True, Plaintiff's intoxication and flight could have led the pursuing officers to reasonably believe that he still posed a safety and flight risk even though he was lying on the ground. *See Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006) (holding a reasonable officer could have interpreted the plaintiff's actions in walking away from police officers towards the door of the police station as a continued attempt to evade arrest); *see also Marvin v. City of Taylor*, 509

9

F.3d 234, 246 (6th Cir. 2007) (considering the suspect's intoxication while assessing the reasonableness of the officers' conduct). After the prolonged chase, a reasonable officer could have believed that Plaintiff might attempt to flee again or resist any attempted arrest with force. *See Goodrich*, 193 F. App'x at 556. But the reasonableness of this belief can only stretch so far. Even if these concerns mean the initial knee strike used to subdue Plaintiff was reasonable, the repeated punches to his head that followed were not. Plaintiff testified that he did not move or fight back when the officers kneed him and flipped him over onto his back. His initial surrender, followed by his continued non-resistance, suffices to permit a reasonable factfinder to find that the punches to Plaintiff's head were "unwarranted and unreasonably severe" and violated Plaintiff's clearly established Fourth Amendment rights. *See Baker*, 471 F.3d at 607; *see also Wysong*, 260 F. App'x at 856 ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right.").

### a. Individual Liability

Next, the Court must determine whether Defendants may be held liable for the violation. This requires Plaintiff to show, with particularity, "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Mere presence is not enough; Plaintiff must show that each Defendant "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quotation marks omitted). The Court must assess each defendant's liability based on his or her own actions. *Id*.

*Officer Moran*. It is undisputed that Officer Moran participated in, and used force during,

Plaintiff's arrest. Moran testified that he was the one who captured, forcibly subdued, and handcuffed Plaintiff. Although he disputes the degree of force used, at this stage that dispute must be resolved in Plaintiff's favor. And Moran's testimony that he arrested Plaintiff, coupled with Plaintiff's testimony about the use of excessive force during the arrest, is sufficient to show a disputed issue of material fact as to whether Moran used excessive force against Plaintiff.

In response, Moran argues that he cannot be liable because Plaintiff has failed to precisely state what Moran did that constitutes excessive force. But § 1983 does not require Plaintiff to attribute each individual strike, blow, kick, and punch to a specific named defendant. Instead, it is enough that Plaintiff has shown that Moran was present and was personally involved in the use of force during his arrest. *See Greer v. City of Highland Park*, 884 F.3d 310, 316 (6th Cir. 2018) ("[T]he parties here do not dispute that a raid of the Greers' home occurred, and the appealing officers have been identified as the parties who executed the search warrant."); *Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011) (declining to grant qualified immunity when the plaintiff could not precisely identify the officers who struck him while he was face down on the ground). Thus, Moran is not entitled to summary judgment on Plaintiff's excessive force claim.

*Officer Reid*. For Officer Reid, the record does not indicate that she was present for, let alone participated in, Plaintiff's arrest. Indeed, Plaintiff, who had just interacted with Reid moments before, specifically denied that Reid was present.[1] Pl. Dep., p. 45. This testimony is corroborated by Reid, who testified that she did not reach the scene until after Plaintiff had been apprehended. True, this testimony conflicts with that of Officer Adkins, who testified that he

---

[1] Plaintiff argues that he could have mistaken Reid, who has short hair, for a man while he was in the dark woods. But this argument is nothing more than speculation, which cannot defeat summary judgment. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 897-98 (6th Cir. 2016).

11

saw Reid in the woods when he arrived. Adkins Dep., p. 31-32. But Adkins also testified that Plaintiff had already been detained at that time and that several other officers were also present. *Id*. Nothing in Adkins' testimony places Reid on the scene during the use of force or the arrest. At most, Adkins' testimony shows that Reid was present, in the woods, near Plaintiff, at some point after the use of force occurred. Even viewing the facts in Plaintiff's favor, this testimony cannot preclude summary judgment. *See Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013) ("Because no evidence places the state and local defendants inside plaintiffs' home at the appropriate time to witness or respond to any unconstitutional conduct that may have occurred, the district court properly granted their motion for summary judgment."). And because Plaintiff has not shown that a reasonable jury could find that Reid actively participated in the use of excessive force or had an opportunity to intervene to prevent it, Reid is entitled to summary judgment on Plaintiff's excessive force claim. *Burley*, 729 F.3d at 620.

### III. Deliberate Indifference to Medical Needs

As noted above, Plaintiff's complaint only includes one count for excessive force. Now, in his response to Defendants' Motion for Summary Judgment, Plaintiff asserts an additional claim for deliberate indifference to medical needs in violation of the Fourteenth Amendment. Generally, a party may not assert a new theory in response to summary judgment. *See Bridgeport Music v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). But although Plaintiff's deliberate indifference claim was not alleged in a specific count, the Court will still consider it.

Plaintiff's complaint alleges that he "repeatedly requested medical attention for his obvious injuries, but was denied same by the jailers at the Warren Police Department jail." Complaint, ¶ 16. It also alleges that when he arrived at the jail, "he had obvious bruising and

injuries about his body." *Id*. at ¶ 15. Because Plaintiff alleges the underlying facts for a deliberate indifference claim, thereby putting Defendants on notice of the potential claim, allowing him to assert it at this stage does not "subject defendants to unfair surprise." *See Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005).[2] Thus, the Court shall address the deliberate indifference claim on its merits.

A Fourteenth Amendment claim for deliberate indifference to medical needs has an objective and subjective component. *Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005). The objective component requires Plaintiff to show that "the alleged deprivation is sufficiently serious–that [he] was incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 796-97 (quotation marks omitted). The subjective component requires Plaintiff to show that Defendants "knew of and disregarded a substantial risk of serious harm to [his] health and safety." *Id*. The Court shall address each in turn.

*Objective Component*. This component involves a two-part inquiry. The Court must first determine whether the injury is "obvious," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). If so, Plaintiff need only show "that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id*. at 900. If not, Plaintiff must submit medical proof to assess whether the delay caused a serious medical injury. *Id*. at 898.

---

[2] Indeed, Defendants preemptively addressed the merits of this claim in their Motion for Summary Judgment.

Plaintiff's visible cuts, bruises, and abrasions, by themselves, do not meet this standard. Not every visible injury satisfies the obviousness test; it must be severe enough that "a layperson would perceive the need for *immediate medical assistance*." *See Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008) (emphasis added). Minor cuts, bruises, and lacerations do not suffice. *Id*.; *Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) ("Lockett's allegations of minor cuts and lacerations do not support his claim that his injuries were, objectively speaking, sufficiently serious to necessitate medical treatment."). And the photographs taken of Plaintiff's injuries belie any suggestion that they evinced an obvious need for immediate medical assistance. *See* Pl. Ex. Q. Nor has Plaintiff pointed to medical records showing that he suffered a serious injury caused by any delay in medical treatment.

The calculus changes, however, when the conduct toward Plaintiff at the station is considered. Plaintiff, who was visibly injured, repeatedly requested medical attention and almost fainted in front of an officer. He also repeatedly asked for water, but was refused. Even in the absence of visibly serious injuries, Plaintiff's sudden near-collapse, coupled with his preceding requests for medical attention, would lead a layperson to believe that immediate medical treatment was necessary. And there can be little debate that depriving a detainee of water is also sufficiently serious to satisfy the objective component. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286-87 (6th Cir. 2006). Thus, viewing the facts in his favor, Plaintiff has presented sufficient evidence for a jury to infer that his obvious need for medical care was sufficiently serious. *Blackmore*, 390 F.3d at 900.

*Subjective Component*. To survive summary judgment, however, Plaintiff must also meet the subjective component by showing that Defendants "knew of and disregarded a substantial

14

risk of serious harm" to his health and safety. *Garretson*, 407 F.3d at 797. Each individual officer must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that officer must have drawn that inference. *Id*. Thus, knowledge of the alleged serious needs or of circumstances indicating their existence "is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896.

Plaintiff has not made this showing. He cannot recall who he asked for water or medical treatment or which officers were present when he nearly fainted. For Moran and Reid, Plaintiff merely believes that they were present, somewhere, in the station. But this speculation does not show that Plaintiff ever asked either officer for assistance or that either officer observed Plaintiff's near-collapse. Absent any evidence to this effect, a reasonable jury could not infer that Defendants ever knew the facts necessary to infer that a substantial risk of serious harm existed. *See Clark-Murphy*, 439 F.3d at 287 (holding the defendants were entitled to summary judgment when the plaintiff did not produce evidence suggesting that they had any reason to think the plaintiff was not receiving the treatment he needed). Nor does the evidence that Moran and Reid observed Plaintiff's cuts, bruises, and abrasions bear this burden. Because those injuries alone were not sufficiently serious, Defendants could not infer from them a substantial risk of serious harm to Plaintiff's health and safety. Thus, there is no genuine issue of material fact as to whether Moran and Reid acted with deliberate indifference to Plaintiff's medical needs and they are entitled to summary judgment on this claim.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court shall GRANT the motion as to

Plaintiff's deliberate indifference claim and his excessive force claim against Defendant Reid.

But the Court shall DENY the motion as to the excessive force claim against Defendant Moran. Accordingly, that claim shall proceed to trial.

    IT IS SO ORDERED.

                                  s/Sean F. Cox
                                  Sean F. Cox
                                  United States District Judge

Dated: April 23, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 23, 2018, by electronic and/or ordinary mail.

                                  s/Teresa McGovern
                                  Case Manager Generalist